In the Matter of the Assignment of THE A. C. MOUNT BROOM COMPANY. Claim of ALBERT GREFE and Objections Thereto.

Assignments: PURCHASE OF ASSIGNEE'S EQUITY: *Building and loan associations.* A purchaser at an assignee's sale of the assignor's equities in land, which, prior to the sale, had been conveyed to the purchaser for the benefit of the assignor, and upon which the purchaser had secured a loan from a building and loan association, subscribing for stock of the association in his own name and pledging the same as collateral security, is entitled as against the assignor and assignee, to the benefit of payments made by them upon the stock.

SAME. Claimant, being the owner of certain premises, borrowed money from a building association for a third person, and gave a mortgage on the premises to secure the same. At the same time claimant purchased in his name shares of stock in the association, which were also pledged as additional security, and the third person agreed to pay the monthly installments thereon. The payment of the installments would mature the stock at the time the mortgage became due, and would pay it. In consideration of the agreement to pay the mortgage to the loan company, and another one on the same premises to another, the claimant agreed to deed

a part of the premises to such third person. After the assignment of the latter for benefit of creditors, but before all the installments were paid claimant purchased the equity of the insolvent in said premises under an order of court, and paid the mortgage, and new certificates of stock issued to him. *Held*, that claimant is under no obligation to the insolvent's estate to account for the installments paid by insolvent on said stock.

*Appeal from Polk District Court*—HON. T. F. STEVENSON, Judge.

SATURDAY, MAY 13, 1899.

THE A. C. Mount Broom Company is a corporation, and made an assignment for the benefit of creditors about October 5, 1895, with G. B. Stewart as assignee. Prior thereto it was indebted to Albert Grefe in the sum of one thousand nine hundred and sixty-four dollars and twenty-three cents, secured by mortgage on personal property. Grefe filed his claim with the assignee, and asked its allowance as a preferred claim, because secured by mortgage. W. L. Roseboom & Co. and J. P. Gross & Co. are also creditors of the corporation, with claims filed and allowed. On the coming in of a report by the assignee, in which these claims are reported and their approval asked, W. L. Roseboom & Co. and J. P. Gross & Co. objected to the approval of the claim of Albert Grefe, as a preferred claim or otherwise, and the grounds of their objection appear from the following facts: A. C. Mount and Albert Grefe were stockholders in the corporation, the latter being its president. Mount was the owner of the west eighty-four feet of lots 7 and 8, in block C, of Griffith's addition to Des Moines. The corporation, which we will call the "Broom Company," desired the west forty feet of the part owned by Mount, and, by an agreement of Mount, Grefe, and the Broom Company, the entire eighty-four feet was conveyed to Grefe and his wife, by Mount, with an incumbrance thereon of one thousand two hundred dollars. In pursuance of the agreement, Grefe and wife borrowed from the Polk County Loan & Building Association eight

thousand dollars, under the conditions and regulations prescribed by the association, which amount was for the Broom Company, and was paid to it. To secure this loan, Grefe and wife made to the association their note and a first mortgage on the eighty-four feet of the lots, and also became members of the association, each taking twenty shares of stock therein, of the par value of two hundred dollars each, so that the amount of stock taken by both was equal to the loan. These certificates of stock were also assigned to the association as additional security for the loan. The membership in the association, and the taking of stock therein, was a part of the plan for obtaining the loan, and agreed to by all the parties. This membership, under the laws of the association, required monthly payments by the stockholders, and these payments, if made as required, would at the maturity of the eight thousand dollar note, be equal to, and effect a payment of, it. As between Grefe and wife and the Broom Company, the latter was to make these payments and discharge this debt. Albert Grefe also made to Mount his note for two thousand eight hundred dollars, payable August 26, 1900, which was secured by a mortgage on the eight-four feet, subject to the other mortgage. This debt was also to be paid by the Broom Company. Grefe and wife gave the Broom Company its written obligations, when the Broom Company should pay the association loan and the special assessments and taxes on the lots, to make it a deed for the west forty feet of the lots; and also, when it should pay the two thousand eight hundred dollar note to Mount, as well as the association loan, to make Mount a deed for the east forty-four feet of the eighty-four feet of the lots. In pursuance of these agreements, the Broom Company made payments to the association to the last of September, 1895, so that the amount thereof and the accumulations amounted to one thousand seven hundred and thirty-eight dollars and eighty cents, and, as we have said, made an assignment the first part of October, and such payments ceased. The assignee there-

after applied to the court for an order to pay to Grefe, for the use of the property, a rental of one hundred and fifteen dollars per month, which order was granted, and such rental was paid for six months, amounting to six hundred and ninety dollars, and Grefe paid the dues on the stock, amounting to seven hundred and seven dollars and twenty cents. On the eighteenth day of January, 1896, the assignee obtained an order to sell, at public sale, on due notice, the equities of the Broom Company in the west forty feet of the lots, and the same was so sold to Grefe, and the sale approved. April 11, 1896, Grefe paid off the association loan, and new certificates issued for the stock to him and to others. The creditors, who appear to object to the allowance of the claim of Grefe, think he has no right, because of his purchase of the interest of the Broom Company in the lots, to take the stock and not account for the money paid by the Broom Company thereon. The district court overruled the exceptions and objections to the report of the assignee, and the objectors appealed.— *Affirmed.*

*Ayers, Woodin & Ayers* for appellants.

*Dudley, Coffin & Byers* for appellee.

GRANGER, J.—I. Appellants submit as a basis for argument a question as follows: "Did the sale of the interest of the A. C. Mount Broom Company in the real estate, by the assignee, also convey the interest of the A. C. Broom Company in the Loan & Building Association stock?" Appellants then say: "Our contention is that the stock held by the Grefes, and the bond and mortgage executed by them to the Loan & Building Association, were two separate and distinct contracts, and that they stood in the double relation to the association as stockholders and borrowers." As the case must turn largely, if not entirely, on what rights passed to Grefe by his purchase of the rights or equities in the land, it may be well to first determine such rights or equities, and such a

determination will necessarily have to do with the correctness of appellants' contention. The Broom Company had no rights in the land, except such as grew out of the contracts by which it sought to become the owner. Because of its irresponsibility, it could not become, directly, the purchaser. Hence the indirect method was adopted of having Grefe and wife take the title, and assume an obligation to convey to the Broom Company on its making certain payments. It was not intended that Grefe and wife should, upon full performance, have any interest in the lots. The carrying out of the contract would put the title to the west forty feet in the Broom Company, and that of the east forty-four feet back to Mount. The taking of the stock was a part of the plan adopted by all as a means of obtaining the loan, and the loan was to be paid, and the incumbrance on the land discharged, by the Broom Company making the payments to mature their stock; and here we state a fact, as we understand it, that is quite important. It was not the intention, at the outset, to discharge the loan and have the stock remaining,—that is, had the Broom Company continued its payments, as agreed upon till the loan note matured, the debt would have been paid and the stock canceled; the taking of the stock being merely incidental to the loan, in the way of additional security and the manner of making the payments. These payments were, in effect, payments on the land under the agreement with Grefe, and, when fully paid, gave the Broom Company a right to the title. The rights or equities of the Broom Company consisted of the right to complete this contract and take the title, with the incidental right of possession. This right it sold under the order of the court, and Grefe had the right to go forward and complete the payments, as the Broom Company could have done, and own the land. Now, let us assume that he did so, and see what, under its contract, the Broom Company could claim for its payments made. No one will for a moment doubt that Grefe could, after his purchase under the order of court,

commence where the company left off, and, by completing the payments, own the land, and the Broom Company would have no claim for its payments; for its equities included the payments, and these were sold. The thought may be clearer if we dismiss for a moment the trivial sum paid, and assume that Grefe paid for the equities the full amount of what the Broom Company had paid. All would then agree that Grefe would not be responsible for anything to the Broom Company. The solution of that difficulty is in this: that Grefe's rights do not depend on what he paid, but upon what he purchased. There is no claim of fraud or unfair dealings. Being a valid sale, Grefe took the same rights whether the amount paid was much or little, and the Broom Company parted with the same rights. Had Grefe gone forward and matured the stock, by making the payments, and thus paid the debt, the stock would have been canceled, and the land been his. In doing this, he would have had the advantage of what the Broom Company had paid. Instead of so doing, he paid the mortgage debt, and then continued payments on the stock, taking new certificates, with a view, as we understand, to complete the payments and own the stock. If the loan association would permit this, we do not see how the Broom Company or its creditors can complain; for its assets, or rights, are in no way affected by it. This case is determined largely upon the contract between the Broom Company and Grefe,—in fact, almost entirely so,—because of which many authorities cited are not in point. The association is not a party here, and its obligations to its members are not brought in question. The authorities cited bear upon controversies with such associations and members and others. It may be true that a member of such an association who is a borrower occupies something of a dual relation, as stockholder and borrower. The claim has the support of reason and authority, but that in no way changes the conclusion we reach; for the facts are as we present them, and such a relationship does not in this case interfere with

the contract with the Broom Company, which is controlling. The judgment will stand AFFIRMED.